Cite as 2019 Ark. App. 478

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR-18-971

| | |
|---|---|
| | **Opinion Delivered:** October 23, 2019 |
| BRUCE WAYNE DEVRIES<br>APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-17-335] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE GRISHAM PHILLIPS, JUDGE |
| | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Bruce Wayne Devries was convicted by a Saline County jury of one count of rape; one count of sexual assault; three counts of video voyeurism; and thirty-two counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child. He was sentenced to forty years' imprisonment for rape, twenty years' imprisonment for sexual assault, six years' imprisonment on each count of video voyeurism, and ten years' imprisonment and a $10,000 fine on each of the thirty-two counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child. He appeals his convictions, challenging the sufficiency of the evidence to support his convictions and arguing that the trial court erred in allowing one of the victims to testify. We affirm.

I.  *Sufficiency of the Evidence*

Devries's first argument is a challenge to the sufficiency of the evidence of each of his convictions.[1] When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* We test the sufficiency of the evidence to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Boyd v. State*, 2016 Ark. App. 407, 500 S.W.3d 772. Substantial evidence is evidence that is of sufficient force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Hinton v. State*, 2015 Ark. 479, 477 S.W.3d 517. With these standards in mind, we consider the evidence presented to the jury relating to each conviction.

A.  Rape and Sexual Assault

Devries's first challenge is to the sufficiency of the evidence to support his rape and sexual-assault convictions.[2] He asserts that these crimes involved the same victim, CC,[3] his now nineteen-year-old stepdaughter. At trial, CC testified that Devries began sexually abusing her when she was in fifth grade while they lived in Kansas, it lasted through several

[1]At the close of the State's case and at the close of all the evidence, Devries moved for a directed verdict on all charges.

[2]As to the rape and sexual-assault allegations, Devries moved for a directed verdict claiming that the victim's testimony was not sufficient to support the charges since she had admitted making the same allegations falsely against her father in the past.

[3]While CC was an adult when she testified at trial, she was a minor when the alleged abuse occurred.

2

interstate moves, and it continued while they were living in Arkansas. CC testified that the abuse included inappropriate touching and digital penetration. CC admitted that she had originally accused her biological father of being her abuser instead of Devries, but she did so only because she was afraid of Devries. She reported that Devries had threatened that she would be sent to foster care away from her family and that he would hurt her mother if she told what had happened between them.

Devries argues that this evidence was insufficient to convict him of either rape or sexual assault. He claims that because CC had previously accused her biological father of abusing her and then subsequently changed her story to identify him as the abuser, she cannot be believed. While he admits that a rape victim's testimony alone is sufficient to support a rape conviction, he claims CC's credibility was "nonexistent" and therefore cannot support a conviction. We disagree.

Our supreme court has held that the uncorroborated testimony of the victim alone is sufficient to support a rape or sexual-assault conviction. *Vance v. State*, 2011 Ark. App. 413. Devries essentially requests that we assess CC's credibility. In a sufficiency analysis, we do not assess the credibility of witnesses, as this is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Moreover, we have clearly stated that inconsistencies in the testimony of a rape victim are matters of credibility for the jury to resolve, and it is within the province of the jury to accept or reject testimony as it sees fit. *Perez v. State*, 2016 Ark. App. 291, 494 S.W.3d 431. Here, the jury heard CC's testimony regarding her claims against Devries as well as her explanation as to why she had

initially accused her biological father. This inconsistency in her testimony was a credibility determination best left for the jury to decide.

## B. Video Voyeurism

Devries next challenges the sufficiency of the evidence to support his conviction of video voyeurism.[4] The victims of these crimes are his adopted teenage daughters, AD and PD. AD was thirteen and PD was twelve when they were adopted by Devries and CC's mother.

At trial, AD, who was sixteen at the time, testified generally that Devries made her uncomfortable and made sexual remarks all the time. Specifically, she observed him watching her through the bathroom window when she was taking a shower, she found a baby monitor in the corner of the bathroom and in her bedroom, and she found holes in the walls between her room and his. She stated that he repeatedly texted her and asked for nude photographs.

Fifteen-year-old PD also testified generally about her relationship with Devries. She testified that he made numerous inappropriate sexual comments to her and engaged in inappropriate touching. As to the video-voyeurism charges, PD specifically testified that she once caught Devries using his phone to video her from underneath her bedroom door.

Detective Dustin Hamm of the Benton Police Department investigated several electronic devices owned by Devries. From Devries's cell phone, Hamm was able to recover several videos. One of the videos was clearly a video taken from underneath PD's closed

---

[4]As to the video-voyeurism charges, Devries moved for a directed verdict claiming that the victims—his children—did not have an expectation of privacy from their parents.

bedroom door. In that video, PD is seen walking back and forth wearing only her bra and panties. At one point, Devries panicked and turned the phone around and showed his face on the video. He then turned the camera back around and started filming her again.

A person commits the crime of video voyeurism if he uses "any camera, videotape, photo-optical, photoelectric, or any other image recording device for the purpose of secretly observing, viewing, photographing, filming, or videotaping a person present in a residence, place of business, school, or other structure, or any room or particular location within that structure, if that person (1) [i]s in a private area out of public view; (2) [h]as a reasonable expectation of privacy; and (3) [h]as not consented to the observation." Ark. Code Ann. § 5-16-101(a) (Supp. 2017).

Devries does not challenge the inappropriateness of the videos; instead, he argues that the children had no expectation of privacy in their parents' home. In support of his claim, he cites *Grant v. State*, 267 Ark. 50, 589 S.W.2d 11 (1979), in which our supreme court held that a foster parent could consent to the search of the defendant child's bedroom. He points to language in that opinion in which our supreme court stated, "A child, either dependent or emancipated (having reached his majority) does not have the same constitutional right or expectation of privacy in the family home that he might have in a rented hotel room. . . ." *Id*. at 55–56, 589 S.W.2d at 14.

We find his argument unpersuasive. *Grant* was a Fourth Amendment search-and-seizure case. This case, on the other hand, involves multiple sexual offenses involving a child and child pornography. The victims in this case were in private areas of their home, and the jury was presented with evidence that they had not consented to Devries's actions.

His sole argument for reversal is that under *Grant*, his children did not have a reasonable expectation of privacy in his home. We disagree. Even if these children do not have a reasonable expectation of privacy in their family home for purposes of the Fourth Amendment, under the facts of this case, they clearly had a reasonable expectation that Devries would not view, film, or photograph them behind their closed bedroom and bathroom doors in the manner and for the purpose in which did. Devries has cited no convincing authority to compel us to hold otherwise. We will not reverse when a point on appeal is unsupported by convincing arguments or sufficient citation to legal authority. *Coger v. State*, 2017 Ark. App. 466, 529 S.W.3d 640; *Ressler v. State*, 2017 Ark. App. 208, 518 S.W.3d 690; *Watson v. State*, 2015 Ark. App. 721, 478 S.W.3d 286.

C. Distributing, Possessing, or Viewing Sexually Explicit Conduct Involving a Child

Devries also challenges the sufficiency of the evidence supporting his conviction for possession of child pornography. Consistent with his motion for directed verdict, Devries claims that the State failed to prove he was responsible for downloading or requesting the sexually explicit images of the children found on his cell phone. He does not challenge the conclusion that the images on his phone constituted sexually explicit conduct involving children.

We conclude that the evidence presented here was sufficient to convict Devries. AD testified that Devries asked her to send nude photos to him. PD testified that Devries would buy things for her friends in exchange for photos and that he had once bet her that he could get her friend to send him nude photos, which he later showed her. Detective Hamm testified that he found at least thirty-two images that undeniably depicted children and that

6

the timestamps on the photos, when compared with Devries's cell-phone-usage history, indicated that it was unlikely anyone other than Devries had downloaded them. Based on this evidence, the jury had sufficient evidence to find that Devries had downloaded the images.

## II. *Admissibility of Evidence*

Lastly, Devries argues that the trial court erred in allowing CC to testify because her testimony was so conflicting that there was no probative value to it. Devries, however, did not make this objection at trial. In fact, he requested and was allowed to introduce CC's inconsistent testimony at trial in order to impeach her. We will not consider arguments that are raised for the first time on appeal, and a party is bound on appeal by the nature and scope of the objections and arguments presented at trial. *Lopez-Deleon v. State*, 2014 Ark. App. 274, at 6–7, 434 S.W.3d 914, 918.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Senior Ass't Att'y Gen., for appellee.